**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

ROBERT M. PEREZ,

      Plaintiff,

v.                              Case No. 3:10-cv-01188

CPL COURTNEY TUSHING,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

On October 6, 2010, plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 (Docket No. 2), alleging violations of his constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636 (b)(1)(B).

For the reasons set forth herein, the undersigned recommends that plaintiff's Complaint be dismissed, with prejudice, for failure to state a claim compensable at law.

**I.**    **Relevant Facts and Procedural History**

On October 15, 2008, at approximately 11:00 p.m., Alan Fleishmann (hereinafter "Fleishmann") was riding his bicycle southbound on U.S. Route 35, a four-lane roadway in Scott Depot, Putnam County, West Virginia.[1]  (Docket No. 27-2 at 15).  Fleishmann

---

[1] The facts are taken from various documents filed by plaintiff with his Complaints.

was wearing reflective tape on his helmet, vest, and shoes, and his bike was equipped with a high intensity discharge headlight and flashing taillights. (*Id.*). As Fleishmann approached an entrance ramp onto the "new" part of Route 35, he moved into the left lane, anticipating that most of the vehicles coming up the ramp would stay in the right lane. (*Id.* at 16). Behind Fleishmann, coming up the ramp to his right, was a semi-truck driven by Paul Perdue ("Perdue"). According to Perdue, traveling behind him was a red Mustang convertible, and in front of Perdue was "the guy on the bicycle in the left lane." (*Id.* at 21). As the three vehicles traveled up the ramp, the Mustang started to pass Perdue's truck in the left lane. Perdue knew that the there was not enough room for the Mustang to fit between his truck and the bicycle, so he moved onto the right shoulder. Nonetheless, Perdue saw the Mustang hit the bicycle. (*Id.* at 21-22). Perdue did not stop, but immediately called 911 to report the accident. As he was making the call, he watched the Mustang pull off the road in a lighted area. (*Id.* at 22). He assumed that the person in the Mustang was going to return to the scene of the accident, but shortly thereafter, Perdue observed the Mustang entering Interstate 64. (*Id.* at 25-26). Perdue followed the Mustang and obtained the license plate number; he re-contacted 911 to provide the dispatcher with the number. He told the dispatcher that the Mustang had not stopped at the accident scene. (*Id.* at 28).

The 911 dispatcher immediately notified Corporal Courtney Tusing ("Tusing") of the Putnam County Sheriff's Department that a "hit and run" accident had occurred on U.S. Route 35. When Tusing arrived at the scene, he found Fleishmann sitting in the median near his bike. (Docket No. 5 at 32). Tusing noted that Fleishmann was wearing reflective clothing and had a red flashing light on the rear of his bicycle. Fleishmann was complaining of pain in his shoulder, legs, and arms, so EMS was called and

transported Fleishmann to the hospital.  (*Id.*).  Fleishmann was later diagnosed with a broken back and scapula.  (*Id.*).

Using the license plate number provided by Perdue, Tusing identified the driver of the Mustang as plaintiff, Robert M. Perez ("Perez"), a resident of Charleston, West Virginia.  (*Id.*).  On October 16, 2008, with the help of a 911 dispatcher, Tusing asked the Charleston Police Department to contact Perez and request that he call Tusing about the accident.  Perez called Tusing and provided an oral statement over the telephone and then came to the police station and provided a consistent written statement.  (*Id.*).  Perez told Tusing that he was passing a semi-truck on Route 35 in a poorly lit area and felt something hit his car.  (Docket No. 5 at 11).  He was unsure of what it was, because he did not see anyone else on the road except for the semi-truck.  (Docket No. 5 at 32).  Perez indicated that he looked in his mirrors to see if he had hit anything and wondered if there was damage to his car.  He pulled over at a lighted area further down the road to inspect his vehicle.  (Docket No. 5 at 11).  He saw some minor damage to his car and proceeded to get onto Interstate 64 East traveling toward his home.  (*Id.*).  Perez repeatedly denied knowledge of having made contact with Fleishmann's bicycle.

On October 20, 2008, Tusing took statements from Fleishmann and Perdue. (Docket No. 5 at 15-29).  He learned from these statements that Fleishmann was in the left "passing" lane at the time of the accident.  Fleishman indicated that he felt an impact, but did not see the offending vehicle prior to or after the accident.  Perdue advised Tusing that the Mustang was in the process of passing his semi-truck and was about equal with his cab when it struck the bicycle.  According to Perdue, the Mustang never passed his truck after striking the bicycle, but instead, fell behind him and then pulled off the road. Perdue assumed the driver of the Mustang was returning to the

location of the accident, although he did not see the car turn around.  In the course of making the first call to 911, Perdue missed the entrance to the Interstate and had to turn around and go back.  After making this turn, Perdue saw the Mustang coming down the road with its headlights turned off, make a U-turn, turn the lights back on, and get onto the Interstate traveling East. (*Id.*).  Perdue followed the Mustang on Interstate 64 until he was directly behind the car.  He obtained the license plate number and reported it. He saw the Mustang exit the Interstate at the Nitro exit.  (*Id.*).

After completing his investigation, Tusing prepared and submitted three documents, two of which form the basis of Perez's Complaint.  First, on October 23, 2008, eight days after the accident, Tusing completed and submitted a DOH Form 17-c, entitled "State of West Virginia Uniform Crash Report" ("Form 17-c"). He reported on that form that Perez had failed to stop after an accident and was cited for a violation of West Virginia law.  Tusing further documented that no violations were found on the part of Fleishmann. (Docket No. 5 at 5-14).  Five days later, on October 28, 2008, Tusing filed the remaining two documents, a Putnam County Sheriff's Department Crime Report (*Id.* at 33-34) and a Criminal Complaint with an attached affidavit, charging Perez with the misdemeanor crime of leaving the scene of a motor vehicle accident involving personal injuries in violation of West Virginia Code § 17C-4-1(a).  (Docket Nos. 2-1 and 2-2).  Based upon the Criminal Complaint and attached affidavit, the Putnam County Magistrate found probable cause that Perez had violated the statute and issued a warrant.

A trial on the Criminal Complaint was conducted in the Magistrate Court of Putnam County, West Virginia and concluded on April 6, 2009.  The jury unanimously found that Perez was not guilty of the misdemeanor offense of knowingly leaving the

scene of an accident with injuries.  (Docket No. 5 at 35).

On July 22, 2010, Fleishmann filed a civil action against Perez in the Circuit Court of Kanawha County, West Virginia seeking damages for the alleged personal injuries he suffered in the accident. (*Id.* at 36-38).  Perez answered the Complaint, *pro se*, on September 22, 2010 and filed a Counterclaim alleging malicious prosecution.  On October 12, 2010, Perez filed a Notice seeking removal of the civil action to the United States District Court for the Southern District of West Virginia, Charleston Division.[2]  Shortly thereafter, counsel for Perez's automobile insurance carrier settled the claims asserted by Fleishmann against Perez.[3]

Perez, acting *pro se,* instituted this civil action on October 6, 2010, alleging that defendant Tusing had "knowingly, maliciously and intentionally filed a false accusation against plaintiff on or about 10-28-08;" to wit, a Criminal Complaint charging Perez with a misdemeanor violation of leaving the scene of a motor vehicle accident involving personal injuries.  Perez asserted that a Putnam County jury exonerated him of the charge on April 6, 2009.  However, as a result of the accusation, Perez suffered inconvenience, emotional distress, lost wages, and was forced to hire attorneys to represent him, causing him to incur unnecessary costs.  According to Perez, Tusing's motivation, in part, for lodging the "malicious accusation" was racial discrimination, as Perez is a Hispanic American.[4]

---

[2] See Case No.: 2:10-cv-1202.

[3] A Notice of Settlement was filed by Fleishmann on November 10, 2010. (Case No. 2:10-cv-1202 at Docket 21).   At a status conference on November 19, 2010, the parties represented that the claims had been settled. (*Id.* at Docket 27).   In view of the settlement, Perez agreed to dismiss his Counterclaim asserting malicious prosecution. (*Id.*) A final Dismissal Order disposing of the Complaint and Counterclaim was entered on December 6, 2010.  (*Id.*)

[4] Perez is of Puerto Rican heritage.  (Docket 31 at 3).

Perez amended his Complaint on October 12, 2010, further accusing Tusing of "tampering" with evidence by intentionally filing a "falsified" accident report (Form 17-c) on October 23, 2008 for the purpose of denying Perez equal protection under the laws.  Perez alleged that Tusing filed the inaccurate accident report despite being fully aware that it directly conflicted with Tusing's own investigation, as detailed in the statements he had previously obtained from Perez and others.  Perez further asserted that Tusing had intentionally and recklessly omitted material facts in his affidavit supporting the Criminal Complaint, which, had they been included, (1) would have confirmed that the alleged victim of the accident was illegally riding a bicycle on a "Highway 'passing lane' where bicycles are not permitted;" and (2) would have defeated the finding of probable cause upon which the Magistrate issued a warrant on the Criminal Complaint. Perez also alleged that Tusing falsified these submissions in an effort to assist Fleishmann and his lawyer in the personal injury case that the Fleishmann had instituted against Perez in State Court.[5]

Perez filed his Second Amended Complaint on January 21, 2011. In this Complaint, Perez reiterated his prior allegations and attached a copy of the Putnam County Sheriff's Department Crime Report completed by Tusing on October 28, 2008, arguing that this report proved that the statements contained in the Form 17-c and affidavit submitted by Tusing were false and dishonest.  Perez pointed to discrepancies in the three submissions, arguing that Tusing falsified certain portions of the records and omitted other material facts to place Fleishmann in a better position in his civil suit. Perez added, "[t]he officer Falsly [sic] accused me and libel and slandered my name Etc.

---

[5] As previously stated, this case was later removed to the United States District Court for the Southern District of West Virginia, Charleston Division, and was settled.  *See Case No. 2:10-cv-01202.*

Maliciously aqnd [sic] Intentionally, willfully and wantonly as his Own reports Suggest!"

On November 24, 2010, Tusing filed an Answer to the Complaint and Amended Complaints,[6] denying the allegations and asserting affirmative defenses. (Docket No. 13). In addition, Tusing maintained that he had qualified immunity against the claims asserted by Perez. On February 4, 2011, Tusing filed a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, as well as a supporting Memorandum. (Docket Nos. 27 and 28). Perez has filed multiple responses since and Tusing has replied. Accordingly, this matter is ripe for resolution.

## II.   Plaintiff's § 1983 Claims

Perez contends that his Fourth and Fourteenth Amendment rights were violated when Tusing filed the Form 17-c and the Criminal Complaint with supporting affidavit. Amalgamating the allegations contained in his three Complaints (collectively referred to as "Complaint"),[7] Perez asserts the following wrongful acts by the defendant:

1.   Tusing intentionally or recklessly made false statements and omitted material facts in the Form 17-c and the affidavit supporting the Criminal Complaint in order to (a) obtain a warrant,  (b) cause Perez to suffer a malicious prosecution, and (c) present Fleishmann's personal injury claims in the best possible light;

2.   Tusing committed libel and slander against Perez by filing these documents; and

3.    Tusing's actions—that is, making false statements in the two documents and his inaction—that is, charging Perez with a misdemeanor violation and not

---

[6] By Order of the Court, defendant was not required to file another Answer to the Second Amended Complaint. Instead, this Answer was accepted as a response to all three Complaints. (Docket No. 25).

[7] Because Perez is acting *pro se*, this Court is required to liberally construe his Complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). For that reason, the undersigned has considered the Complaints collectively, rather than as superseding pleadings. However, even under this less stringent standard, the Complaints still must contain sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite pleadings to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop a plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

charging Fleishmann—were motivated by racial discrimination and were intended to deprive him of equal protection of the laws.

In response, Tusing denies that he violated any constitutional rights enjoyed by Perez. Furthermore, Tusing argues that he is protected from Perez's claim for damages, because, under the circumstances of this case, he is entitled to qualified immunity in the performance of his discretionary duties as a law enforcement officer.[8]

## III.  <u>Standard of Review</u>

Pending before the Court is Defendant Tusing's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which is a "failure to state a claim upon which relief can be granted." Rule 12(b)(6) tests the legal and factual sufficiency of a Complaint. *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009), citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court explained the "plausibility" standard in *Iqbal*, stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

---

[8] In the Memorandum Supporting the Motion to Dismiss, Tusing is unduly focused on a purported claim by Perez that Tusing should have given the Magistrate a copy of the West Virginia statute that prohibits bicycles from traveling in the passing lane of a highway, suggesting that this omission is the only action or inaction challenged by Perez. The undersigned does not interpret Perez's claims to be quite so narrow or singular. Perez mentioned this West Virginia statute in the context of emphasizing that Fleishmann was in violation of the law at the time of the accident, contributing to the collision, and despite this, Tusing only issued a citation to Perez. However, as indicated herein, Perez's Complaints include other alleged wrongful acts by Tusing, which generally all stem from the statements contained in the two documents identified above. Having noted the limitations of Tusing's Memorandum, the undersigned further acknowledges that Tusing adequately raised the material legal principles and defenses applicable to a Motion to Dismiss. Therefore, they are properly before the Court.

*Ashcroft v. Iqbal, supra* at 1949, quoting *Bell Atlantic Corp v. Twombly*, *supra* at 1955 (internal citations omitted). Determining whether a Complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal, supra* at 1950, citing *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir. 2007). While the Court is required to accept as true the factual allegations asserted in the Complaint, it is not required to accept the legitimacy of legal conclusions that are "couched as . . . factual allegation[s]." *Ashcroft v. Iqbal, supra* at 1949, quoting *Bell Atlantic Corp v. Twombly*, *supra* at 1955. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal, supra* at 1950. Applying this standard of review, the undersigned has analyzed plaintiff's Complaint to determine its facial plausibility.

## IV.   Controlling Legal Principles

In order to fully assess the plausibility of Perez's Complaint, the undersigned must also consider the controlling legal principles.

### A.   42 U.S.C. § 1983

42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights **by persons** acting under color of any state "law, statute,

ordinance, regulation, custom, or usage."   Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Scheuer v. Rhodes,* 416 U.S. 232, 243 (1974), quoting *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must present facts showing that: (1) a person (the defendant) deprived him or her of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of State law. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, * 4 (D.S.C. 2010); *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999).

In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the United States Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police, supra* at 71.  As elucidated by the Court, "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* The Court later clarified its holding, making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Kentucky v. Graham,* 473 U.S. 159 (1985); *see also Hafer v. Melo,* 502 U.S. 21 (1991).  The Court explained that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom."  *Hafer v. Melo, supra.* at 25, citing *Kentucky v. Graham, supra* at 166. "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for

actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official.  As a general proposition, the doctrine of sovereign immunity contained in the Eleventh Amendment to the United States Constitution bars suit against a State.  *Will v. Michigan Department of State Police, supra.*  By extension, sovereign immunity bars claims for money damages against state officials acting within their official capacities, including claims brought pursuant to § 1983.[9]  *Id.*  To the contrary, suits for money damages brought against state officials acting in their personal capacities under color of state law are not barred by the doctrine of sovereign immunity. *Id.*  Instead, a state official sued in his or her personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit.

In this case, Perez contends that he was denied his Fourth Amendment right to be free of unreasonable searches and seizures when Tusing submitted falsified documents that led the Magistrate to issue a warrant without the requisite probable cause.  In addition, Perez claims that he was denied his Fourth and Fourteenth Amendment rights when he was wrongfully prosecuted on the misdemeanor charge. Finally, Perez implies that his Fourteenth Amendment right to equal protection was violated when Tusing issued a citation to Perez, but did not cite Fleishmann for his separate violation of law. Perez does not specify whether he is suing Tusing in his "official capacity" or "personal capacity," but considering the nature of the factual allegations, the undersigned presumes that the claims against Tusing have been asserted against him in his personal capacity.  Consequently, Tusing does not enjoy the sovereign

---

[9] Sovereign immunity does not bar § 1983 claims against state officials in their official capacities to the extent that the claims seek prospective relief.  *Will v. Michigan Department of State Police, supra.* However, in this case, Perez seeks only monetary compensation, so that exception to sovereign immunity is inapplicable.

immunity of the State of West Virginia, but is at liberty to, and does, assert the bar of qualified immunity.

### B.    Qualified Immunity

A Complaint that states plausible facts and accepted legal theories may nonetheless be subject to a Rule 12(b)(6) dismissal if the defendant is immune from liability.   In this case, Tusing contends that he is entitled to the bar of qualified immunity against the claims asserted by Perez. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 230 (2009), quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "It is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994).   This doctrine protects law enforcement officers in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas," ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992).   As the United States Supreme Court explained in *Pearson v. Callahan:*

> Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.   The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan, supra* at 815, quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004).

Because qualified immunity is "an immunity from suit rather than a mere defense to

liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan, supra* at 815, quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is 'an entitlement not to stand trial or face other burdens of litigation.'"  *Saucier v. Katz,* 533 U.S. 194, 200 (2001), quoting *Mitchell v. Forsyth*, *supra* at 526. Accordingly, the right of a defendant to exercise qualified immunity against suit should be examined and resolved "at the earliest possible stage in litigation."  *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

In resolving whether an official is entitled to qualified immunity in a given case, the United States Supreme Court developed a two-step sequential analysis in *Saucier v. Katz, supra.* The Court must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan, supra* at 811, quoting *Saucier v. Katz, supra* at 201*.* "Qualified immunity applies unless the official's conduct violated such a right. *Pearson v. Callahan, supra* at 811, citing to *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). The first question the Court is required to answer is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz, supra* at 201.  If so, then the second question asks whether this right was clearly established.  Was it "clear to a reasonable officer that his conduct was unlawful in the situation he confronted?" *Id.* "The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred. . . . The defendant bears the burden of proof on the second question—i.e., entitlement to qualified

immunity." *Henry v. Purnell,* 501 F.3d 374, 377-378 (4th Cir. 2007) (internal citations omitted).

In *Pearson v. Callahan,* the Court modified the analytical process, holding that the sequence was not rigid and the steps could be addressed in any order that "[would] best facilitate a fair and efficient disposition of each case." *Pearson v. Callahan, supra* at 812.   As such, if a Court finds that a claimed constitutional right was not clearly established at the time of the alleged wrongdoing, the Court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right.  *Id.*  Similarly, if a Court determines that the facts alleged by the plaintiff do not support a reasonable inference that a constitutional right was violated, the analysis terminates, and the Complaint is subject to dismissal for failure to state a claim.  The issue of qualified immunity is purely a question of law and is always capable of decision at the summary judgment stage.  *DiMeglio v. Gaines,* 45 F.3d 790, 794 (4th Cir. 1995).[10]

## IV.  <u>Analysis</u>

The language used by Tusing in both the affidavit supporting the Criminal Complaint ("affidavit") and the Form 17-c constitutes the factual crux of Perez's Complaint.   According to Perez, the affidavit omitted material facts, misleading the Magistrate into finding probable cause to issue a warrant and resulting in Perez's wrongful prosecution. Perez postulates that Tusing's dishonest manipulation of these facts stemmed from a racially motivated animus. In addition, Perez claims that the intentional inaccuracies contained in the Form 17-c were designed to place Fleischmann

---

[10] Although the issue of qualified immunity has been raised here in a Motion to Dismiss, the plaintiff has attached all of the material documentation to his pleadings.  Neither party has objected to the authenticity or relevance of the attachments.  Accordingly, even at this early stage in the litigation, the case is in a proper posture to decide the dispositive legal questions at issue.

in a better position in his civil suit.  Perez implies that Tusing violated his Fourteenth Amendment right to equal protection under the law by ticketing Perez, but not ticketing Fleishman.  Finally, Perez contends that Tusing libeled and slandered him by publishing these documents.

Having carefully and thoroughly examined Perez's Complaint, attachments, and memoranda, the undersigned **FINDS** that plaintiff has not stated a plausible claim under 42 U.S.C. § 1983.  As explained *infra*, Perez fails to plead facts sufficient to sustain a reasonable inference that Tusing violated a constitutional right enjoyed by Perez.  Consequently, Perez is unable to establish a fundamental element necessary to maintain a *prima facie* case under § 1983 and, likewise, fails to survive the first step in the *Saucier* analysis in regard to the applicability of the qualified immunity bar.

### A.    Probable Cause to Issue the Warrant and Prosecute Perez

The law is well-settled that "[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable."[11]   *Brooks v. City of Winston-Salem,* 85 F3d. 178 (4th Cir. 1996).   Likewise, prosecution based upon "legal process that was not supported by probable cause" combined with "criminal proceedings terminated in [plaintiff's] favor are sufficient to state a . . . claim alleging a seizure that was violative of the Fourth Amendment."  *Brooks v. City of Winston-Salem, supra* at 183-184.[12]

Perez contends that his "malicious prosecution" also constituted a violation of his

---

[11] The record in Case No: 2:10-cv-1202, filed in this Court, reflects that an arrest warrant was issued, Perez posted bond and ultimately was prosecuted on the misdemeanor charge in the Magistrate Court of Putnam County. (*See* Case No: 2:10-cv-1202, Docket No. 2-1 at 30).

[12] Because performance of the first step of the *Saucier* analysis effectively disposes of this case, the undersigned will not address the issue of whether the prosecutor's independent decision to proceed to trial on the misdemeanor charge constitutes a superseding event that effectively breaks the causal connection between Tusing's affidavit and, at least, some of plaintiff's alleged damages.

Fourteenth Amendment rights.  However, the Fourth Circuit has clearly held: "There is no such thing as a § 1983 malicious prosecution claim."  Instead, this type of claim is "simply a claim founded on the Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution. . ."  *Lambert v. Williams,* 223 F.3d. 257, 262 (4ᵗʰ Cir. 2000).  In *Lambert,* the Court explained that a violation of substantive due process could not be proven through the common law elements of a malicious prosecution case, noting that the United States Supreme Court had rejected that approach in *Albright v. Oliver,* 510 U.S. 266 (1994).  In *Albright,* plaintiff argued that his "'liberty interest to be free from criminal prosecution except upon probable cause' constituted a violation of substantive due process."  *Lambert v. Williams, supra* at 261, citing *Albright v. Oliver, supra* at 268.  A majority of the justices agreed "that the right to be free from prosecution without probable cause was not a substantive due process right, but rather was a violation of the [plaintiff's] Fourth Amendment right to be free from unreasonable seizures.  The plurality noted specifically that 'substantive due process may not furnish the constitutional peg on which to hang [a malicious prosecution] 'tort.'"  *Id.,* citing *Albright v. Oliver, supra* at 271 (internal citations omitted).  Accordingly, Perez's claims for wrongful arrest and malicious prosecution fall within the protections of the Fourth Amendment.

In *Miller v. Prince George's County, Maryland,* 475 F.3d. 621 (4ᵗʰ Cir. 2007), a case similar to this one, the Fourth Circuit Court of Appeals held that in order for a plaintiff to succeed in a suit alleging an unreasonable seizure or prosecution based on lack of probable cause, he or she must prove that the officer deliberately or with reckless disregard for the truth made material false statements in an affidavit supporting the request for a warrant, *Miller v. Prince George's County, Maryland, supra at 627*, citing

*Franks v. Delaware*, 438 U.S. 154 (1978), or omitted "material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's County, Maryland, supra* at 627, quoting *United States v. Colkley,* 899 F.2d 297, 300 (4th Cir. 1990).   "Reckless disregard" can be established with evidence that the officer was acutely aware at the time he made the challenged statements that they were untrue or that he entertained serious doubts about their accuracy.  *Miller v. Prince George's County, Maryland, supra* at 627.  In the case of omissions, reckless disregard can be established by evidence that the law enforcement officer "failed to inform the judicial officer of facts [the law enforcement officer] knew would negate probable cause." *Id.* quoting *Beauchamp v. City of Noblesville, Inc.,* 320 F.3d 733, 743 (7th Cir. 2003).  "Moreover, in order to violate the Constitution, the false statements or omissions must be 'material,' that is, 'necessary to the [judicial officer's] finding of probable cause.  To determine materiality, a court must 'excise the offending inaccuracies and inset the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit establishes probable cause.  If the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." *Miller v. Prince George's County, Maryland, supra* at 628 (internal citations omitted). Therefore, the undersigned must first include in Tusing's affidavit the facts that Perez claims were wrongfully omitted.  If after doing so, the corrected affidavit still establishes probable cause for a violation of West Virginia Code § 17C-4-1(a), Perez's claims of Fourth Amendment violations based upon wrongful arrest and prosecution are foreclosed.

Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing

an offense." *George v. Kanawha County Sheriff's Department*, 2011 WL 108930 *2 (S.D.W.Va.), quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Probable cause requires more than a mere suspicion, but does not require evidence sufficient to obtain a conviction. *Wong Sun v. United States*, 371 U.S. 471 (1963). "The existence of probable cause 'always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *George v. Kanawha County Sheriff's Department, supra* at *2, quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). "When no reasonable officer could believe, in light of the circumstances of the offense, that probable cause exists, there is a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause." *George v. Kanawha County Sheriff's Department, supra* at *2-3.

Here, the Criminal Complaint charged Perez with a violation of West Virginia Code § 17C-4-1, entitled "Crashes involving death or personal injuries; Erin's Law." In particular, Tusing accused Perez of violating subsection (a), which states as follows:

> The driver of any vehicle involved in a crash resulting in injury or death of any person shall immediately stop the vehicle at the scene of the crash or as close to the scene as possible and return to and remain at the scene of the crash until he or she has complied with the requirements of section 3 of this article: *Provided,* That the driver may leave the scene of the crash as may reasonably be necessary for the purpose of rendering assistance to an injured person as required by said section three. Every stop shall be made without obstructing traffic more than is necessary.

Turning to the affidavit in this case, Tusing wrote the following:

> On the above date [October 15, 2008] this deputy received a call for a hit and run on the new Rt. 35 close to Rt. 34. The dispatcher said that a witness, a Paul Purdue had called in and said a red Mustang had hit a man on a bicycle and did not stop. Mr. Purdue finally got behind the suspects vehicle on I-64 and was able to get a WV registration of 9NE429. I had 911 run the registration and it came back to a 1995 Ford Mustang convertible belonging to a Robert M. Perez out of Charleston WV. I had 911 bolo Kanawha County for that vehicle in reference to this hit and run. I also

asked if a Charleston PD Officer would go by the residence and see if the car was there and have the owner contact this deputy.

When I arrived on the scene I saw a male sitting in the median next to his bicycle. He had on an orange reflective vest and a red flashing light on the rear of his bicycle. At this time he had pain in his shoulder and pain in his legs and arms from road rash. The bicyclist was taken by EMS to Charleston General. This deputy later found out that he had a broken back and broken scapula on 10/20/08. The bicyclist was identified as Alan Fleishmann with a date of birth of 10/20/53.

On 10/16/08 Charleston PD went to the residence and the car was not at the residence. Later on that morning I had 911 call Charleston PD and see if they would go by there again. Cpl. Duncan of Charleston PD spoke to Robert M. Perez who was the owner. After they spoke to him Mr. Perez then called the Sheriff's Department @ 0359 and I spoke to him. I then told him that I need to speak to him at the Sheriff's Department on 10-16-08 @ 1930 about the auto accident. Mr. Perez met with me and gave me a written statement that matched his verbal statement he had given me early that morning. He said that he was driving on the new Rt. 35 and as he was passing a semi truck he felt something hit the car. He then continued to 1-64 and got off at the Nitro Exit. He said that he did not see anyone on the road except the semi truck.

On 10/20/08 @ 2058 I spoke to the witness Paul Purdue who was driving the semi truck. He said that he saw the bicyclist on the new Rt. 35 next to the median in the fast lane. He said that he had some sort of vest on and a red light on the rear and a headlight. Mr. Perdue said that the Mustang was passing him and when the car was right at his cab that is when he hit the bicycle. The red Mustang then continued South on Rt. 35 and got on I-64. Therefore this deputy requests a warrant be issued for leaving the scene of an accident with injury.

Perez specifically complains that Tusing omitted the following material information from the affidavit: (1) Perez had stopped in a lighted area down the road before proceeding onto Interstate; (2) Perez denied knowledge of the collision; and (3) Fleishmann was riding his bicycle in the passing lane in violation of West Virginia law. Having considered Perez's contentions in the light most favorable to him, the undersigned finds that probable cause existed for issuance of the warrant on the Criminal Complaint even after "correcting" the affidavit to include the aforementioned

omissions.

Adding a statement to the effect that Perez stopped for a few minutes down the road to examine his vehicle before proceeding onto the Interstate would not have defeated probable cause for the alleged violation. The statute required Perez to return to the scene of the collision and remain there until he had provided Fleishmann with his personal information and rendered aid.[13] Perez did none of these things. The fact that he stopped down the road was not enough to comply with the express statutory language. Similarly, adding a statement that Fleishmann was illegally riding his bicycle in the passing lane would not have defeated probable cause, because the fault of the injured person is neither an element of, nor obviates, the statutory obligations of the involved driver. The statute explicitly requires "the driver of any motor vehicle involved in a crash resulting in injury to or death of any person" to stop, return to the scene and remain there until completing the additional required acts. Accordingly, Fleishmann's role in the crash was immaterial to Perez's duties.

Finally, adding a statement that Perez denied knowledge of the collision would not have prevented issuance of the warrant. Subsection (a) of the statute establishes the duties of the driver of any motor vehicle involved in a collision causing injury. In this case, there was substantial evidence supporting the requisite elements of that subsection. Perdue saw the collision occur and identified the involved motor vehicle by its license plate number. The license plate number led to Perez, who admitted that he was driving the car on the date and time in question and at the location of the collision. Tusing confirmed that Fleishmann was, in fact, injured as a result of the impact, having suffered broken bones and road rash. Fleishmann, Perdue, and Perez further confirmed

---

[13] West Virginia Code § 17C-4-3.

that Perez did not return to the scene of the accident or remain there to provide information and render aid. Accordingly, the material elements of subsection (a) were verified by Tusing before he filed the affidavit.  Perez's knowledge of the collision was only relevant to whether or not he was guilty of a misdemeanor pursuant to subsection (c) of the statute, which provides:

> Any person knowingly violating the provisions of subsection (a) of this section after being involved in a crash resulting in physical injury to any person is guilty of a misdemeanor and, upon conviction thereof, shall be punished by confinement in jail for not more than one year, or fined not more than $1,000, or both.

Tusing had no duty or authority to determine Perez's guilt or innocence under subsection (c) of the statute.  Instead, his obligation was to determine whether sufficient evidence existed upon which to reasonably request the issuance of a warrant for a violation of subsection (a). Tusing fulfilled that obligation. Hence, the undersigned **FINDS** that Tusing did not omit material statements from the affidavit and that probable cause supported issuance of the warrant even after "correcting" the affidavit to add all of the additional information suggested by Perez.  Therefore, the undersigned further **FINDS** that the facts alleged by Perez do not give rise to a constitutional deprivation. Applying the first step of the *Saucier* analysis, the elements of a § 1983 claim, and the plausibility standard in *Iqbal*, the undersigned concludes that plaintiff has failed to state a claim against Tusing in regard to the affidavit based upon alleged violations of the Fourth Amendment.

### B.    Racial Discrimination and Equal Protection Claims

Complementary to the Court's finding that the warrant was supported by probable cause, the undersigned finds no merit in Perez's contentions that Tusing falsified documents to place Fleishmann in a better position in his civil action, or as an

expression of racial discrimination against Perez. In addition to the alleged "dishonest" affidavit, Perez argues that discrepancies in the Form 17-c, as well as Tusing's failure to equally cite Fleishmann for a violation of West Virginia law, expose the true and nefarious motivations behind Tusing's actions.    Specifically, Perez complains that Tusing "falsified" the Form 17-c by (1) indicating that the speed limit was 60 m.p.h. when it was actually 65 m.p.h.; (2) stating that Fleishmann was on the shoulder of the road at the time of the impact when Perdue said Fleishmann was in the road near the median; and (3) incorrectly identifying the precise location of the crash.   Perez further contends that Tusing's refusal to cite Fleishmann amounts to a denial of Perez's Fourteenth Amendment right to equal protection under the laws.

Applying the plausibility standard set forth in *Iqbal*, the undersigned rejects these allegations as nothing more than conclusory statements made without a sufficient basis in fact.   Despite having filed a myriad of documents and pleadings in this case, Perez has never recounted a single anecdote, or described a solitary exchange between him and Tusing that supports his bald statement that Tusing's actions were racially motivated.   Moreover, the Complaint lacks even the slightest suggestion that Tusing was aware of Perez's Hispanic ancestry.[14]   "Allegations of racial discrimination are actionable under § 1983, but merely conclusory allegations of discrimination are insufficient to state a claim."   *Cullins v. Sumter City Police Department,* 2011 WL 291252 *4 (D.S.C.), citing *Chapman v. Reynolds*, 378 F.Supp. 1137 (W.D. Va. 1974)(internal citations omitted).   Other than his own speculation, Perez offers no basis upon which to support a reasonable inference that Tusing acted out of racial discrimination.   Inasmuch as the

---

[14] Of particular note, the Putnam County Sheriff's Department Crime Report, filed by Tusing twelve days after he interviewed Perez, documented Perez's race as "W" and his ethnicity as "N," which generally refer to an individual who is white, non-hispanic.  (Docket No. 23 at 14).  Fleishmann is also identified as being "W" and "N."

Court is not obligated to accept Perez's unsupported legal conclusions as true, the undersigned finds that Perez fails to state a claim of racial discrimination.

Likewise, assuming *arguendo* that, for some inexplicable reason, Tusing did wish to assist Fleishmann in his civil suit by not citing him for a traffic violation and by maipulating details on the Form 17-c, Perez fails to explain how this action would constitute a deprivation of his right to equal protection of the laws.[15] The Equal Protection Clause of the Fourteenth Amendment "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001), quoting Nordlinger *v. Hahn,* 505 U.S. 1 (1992). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Id.* "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Although Perez asserts in his January 21, 2011 Amended Complaint that Tusing "openly and readily admitted" that he was working with Fleishmann's attorney and that "Judge Eaglosky wanted him to Charge me With an offense," (Docket No. 23 at 2), Perez fails to allege that he was treated differently from other persons accused of leaving the scene of a motor vehicle accident with injuries in contravention of West Virginia Code § 17C-4-1(a). Perez implicitly suggests that he was subject to disparate treatment, simply because he was charged with an offense, when Fleishmann was not also charged. The United States Supreme Court has recognized the concept of a "class of one" equal

---

[15] Significantly, Tusing filed his reports in October 2008, nearly two years before Fleishmann filed his lawsuit.

protection claim, where a plaintiff claims that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). However, Perez does not assert facts to establish that he and Fleishmann were similarly situated or that he was treated differently from others who were similarly situated. Moreover, if he could provide such facts, he still fails to put forth a plausible claim that the disparate treatment lacked a rational basis.  Significant differences existed between the charge filed against Perez and the one, according to Perez, that should have been filed against Fleishmann.  Most importantly, in order to trigger the statute under which Perez was charged, three significant events had to occur:  a traffic accident, a personal injury to a person, and an involved driver leaving the scene.  In addition, a violation of that statute carried harsh penalties, including a fine of up to $1,000 and a term of imprisonment not to exceed one year.  Conversely, improperly driving in the passing lane, the violation allegedly committed by Fleishmann, did not require an accident or an injury and carried the maximum penalty of a $50 fine and court costs.    The West Virginia legislature made it abundantly clear that it considered the gravity of these violations to be significantly different and felt the perpetrators should be subject to significantly different punishments.

Accordingly, although Perez may be able to demonstrate that he received a citation when Fleishmann did not, Perez simply fails to offer any factual basis upon which to believe that such treatment was disparate. Moreover, as previously discussed, Perez has failed to supply a factual recitation that could reasonably support the inference of racial discrimination. In the absence of evidence to support a "class of one" claim or disparate treatment based upon racial discrimination, Perez offers no other

factual foundation upon which to prosecute an equal protection complaint. Perez makes a bare assertion of an equal protection claim, but does not allege sufficient facts to support anything more than the "mere possibility" of one.  Accordingly, the undersigned **FINDS** that Perez's Fourteenth Amendment claim also fails to meet the plausibility standard.

### C.    Libel and Slander

Finally, Perez contends that Tusing's filing of the "falsified" Form 17-c and Criminal Complaint with supporting affidavit constituted libel and slander against Perez.  The undersigned need not address the substantive merits of this claim, however, because the law is well-settled that an "alleged act of defamation of character or injury to reputation is not actionable under 42 U.S.C. § 1983," *Dickerson v. City of Charleston Police Department,* 2009 WL 4920166, *4 (D.S.C.), citing *Paul v. Davis,* 424 U.S. 693, 697-710 (1976). Because "a defamed person has not been deprived of any right, privilege, or immunity secured to him by the Constitution or the laws of the United States," he cannot state a viable claim under § 1983.  *Miller v. Jack,* 2007 WL 2050409, *6 (N.D.W.Va. 2007); *see* also *Fleming v. West Virginia,* 2009 WL 960217 (S.D.W.Va). Civil rights statutes, such as 42 U.S.C. § 1983, simply do not impose liability for violations of duties arising under a State's tort law. *Dickerson v. City of Charleston Police Department, supra,* citing *DeShaney v. Winnebago County Dep't of Soc. Ser.,* 489 U.S. 189, 200-203 (1989). *LaHue,* 460 U.S. 325, 327-46 (1983).   Therefore, the undersigned **FINDS** that Perez's claims of libel and slander fail to state a claim based upon a violation of 42 U.S.C. § 1983 and should be summarily dismissed.

## V.    Conclusion

The undersigned, having considered the facts in the light most favorable to plaintiff and having analyzed the application of the facts to the controlling legal principles, finds that plaintiff has failed to state a claim that is compensable at law. For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings set forth herein and **RECOMMENDS** as follows**:**

1. Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 27) be **GRANTED**;

2. Plaintiff's Complaints (Docket Nos. 2, 5, and 23) be **DISMISSED, with prejudice,** for failure to state a claim; and

3. This matter be removed from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, the respondent, and any counsel of record.

**FILED:** March 3, 2011.

Cheryl A. Eifert
United States Magistrate Judge

- 27 -